IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 14-cv-02028-RPM

TRAVELERS HOME AND MARINE INSURANCE COMPANY,

    Plaintiff,

v.

CENTRAL MUTUAL INSURANCE COMPANY,

    Defendant.

---

## ORDER GRANTING SUMMARY JUDGMENT FOR THE PLAINTIFF

---

Travelers Home and Marine Insurance Company ("Travelers" or "the Plaintiff") and Central Mutual Insurance Company ("Central" or "the Defendant") each contributed to the settlement of a negligence action against a common insured, Winston Howe ("Howe"). In this federal diversity action, Travelers alleges that it paid more than its required share of the settlement. Asserting claims for declaratory judgment, Travelers seeks determinations that the Central Policy was primary and the Travelers Policy was excess; that Travelers did not have any duty of indemnification until and unless the limits of the Central Policy were exhausted; that Central is obligated to reimburse Travelers in the amount of $158,333, and that Travelers does not owe contribution to Central for the cost of Howe's defense.

On August 28, 2014, Travelers moved pursuant to Fed.R.Civ.P. 56 for summary judgment in its favor. The motion has been fully briefed. The material facts are not in dispute.

On or about August 19, 2011, Howe was driving a 1993 Chevrolet Suburban in or near Kasilof, Kenai, Alaska, when Howe was involved in an auto accident with a vehicle driven by Gary William Timm ("Timm").  Howe is a resident of Colorado.  The Suburban that Howe was driving at the time of the accident was owned by Walter Pawlowski ("Pawlowski"), a resident of Texas.

Timm brought a negligence suit against Howe in an action captioned *Gary W. Timm vs. Winston A. Howe*, in the Superior Court for the State of Alaska, Third Judicial District at Kenai, Case Number: 3KN-13-462 Civil ("the Timm Action"), seeking damages for alleged injuries and losses arising from the accident.

Travelers had negotiated and issued an automobile insurance policy in Colorado to Howe, which afforded $500,000 per accident in combined single limit liability coverage.  (Pl.'s Ex. A, "the Travelers Policy").

Central had issued an automobile insurance policy in Texas to Pawlowski that identified the 1993 Chevrolet Suburban as one of the "vehicles covered." (Pl.'s Ex. B, "the Central Policy").  The Central Policy afforded liability coverage limits of $250,000 per person, and $500,000 per accident.

Both the Travelers and Central Policies were in effect at the time of the accident.  Howe was a permitted user of Pawlowski's Suburban, and thus qualified as an insured under the Central Policy.

Howe tendered the Timm Action to both Travelers and Central for defense and indemnification under the insurers' respective policies.

The Travelers' Policy includes an "Other Insurance" provision which provides in relevant part as follows:

> OTHER INSURANCE
> If there is other applicable liability insurance:
> **1. Any insurance we provide for a vehicle you [Howe] do not own shall be excess over any other collectible insurance providing coverage on a primary basis. . . .**

(Pl.'s Ex. A at TRAV 7, emphasis added).

The Central Policy also includes an "Other Insurance" provision, which provides:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any liability insurance we provide to a covered person for the maintenance or use of a vehicle you [Pawlowski] do not own shall be excess over any other applicable liability insurance.

(Pl.'s Ex. B at TRAV 50).

Central took control of the defense of Howe in the Timm Action, initially accepting that its policy afforded primary coverage and the Travelers coverage was excess. (See Pl.'s Ex. E, Aff. of William Shoemaker at ¶¶ 2 – 3).[1]

In March 2014, Central changed its position and asserted that the Travelers coverage was co-primary and that Travelers was required to provide coverage to Howe on a pro rata basis with Central. Travelers disputed Central's position that the coverages were co-primary, but did not then stand on the issue and reserved its right to ultimately determine the carriers' respective rights and obligations. (*Id.* at ¶¶ 4 – 6).[2]

---

[1] This statement is set forth in Travelers' statement of undisputed facts, and Central did not admit or deny it. Because Central did not dispute this statement, it is considered an undisputed fact.

[2] See note 2 *supra*.

The opportunity arose to settle the claims against Howe in the Timm Action.  Travelers agreed to contribute to the settlement under the pro rata formula insisted upon by Central, but continued to maintain that the Travelers coverage was excess.

The Timm Action was settled for $275,000, of which Travelers paid two thirds ($183,333) and Central paid one third ($91,667).

Travelers claims that its contribution to the settlement should have been only $25,000 – i.e, that part of the settlement that exceeded the $250,000 liability limits of the Central Policy. Travelers seeks reimbursement from Central in the amount of $158,333 (the result of $183,333 minus $25,000).

Travelers' claim is premised on its interpretation of the "other insurance" clauses in the two policies.  "Other insurance clauses generally determine the order and amount in which policies within a given coverage layer must respond to a claim."  1 NEW APPLEMAN  LAW OF LIABILITY INSURANCE  § 1.10 (Matthew Bender, Rev. Ed).  There are various types of "other insurance" clauses, including pro rata clauses and excess clauses.  *Id.*  A pro rata clause typically limits the policy's coverage to an amount proportionate to the policy's limit relative to the aggregate of the limits of all the triggered policies.  *Id.*  An excess clause typically limits coverage to the liability left after other triggered policies have paid their limits.  *Id.*

The Travelers' Policy contains an "other insurance" clause with an "excess" provision, which was triggered because Travelers' insured (Howe) did not own the automobile he was driving when the accident occurred.

The Central Policy contains an "other insurance" clause with a pro rata provision. The Central Policy also contains an excess provision, but that language was not triggered because Central's named insured (Pawlowski) owned the automobile driven by Howe.

Travelers argues that the excess provision in its policy is a valid and enforceable provision, which by its plain terms makes the Travelers' coverage excess. Central contends that the pro rata provision in the Central Policy and the excess provision in the Travelers Policy are mutually repugnant provisions that negate each other and render the policies co-primary.

The determination of that dispute depends on the governing law. Travelers contends that Colorado law applies. Central argues that this Court should apply the law of Alaska.

In Colorado, an "excess" other insurance clause is valid and enforceable, so long as there is not a conflicting "other insurance" clause making both policies excess. *Colonial Ins. Co. of California v. Am. Hardware Mut. Ins. Co.*, 969 P.2d 796, 800 (Colo.App.1998); *Farmington Cas. Co. v. United Educators Ins. Risk Retention Group*, 117 F.Supp.2d 1022, 1027 (D. Colo. 1999) (applying Colorado law). It is only when there are conflicting excess clauses that Colorado does not give full effect to both of them, "as that would leave the insured with no coverage for liability." *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 666 (Colo.2011)(en banc). Here, however, there are no conflicting excess provisions, and thus under Colorado law, the coverage provided by the Travelers Policy would be excess and only the Central Policy would be primary.

That is the majority rule. *See Ins. Co. of N. Am. v. Am. Home Assur. Co.*, 391 F.Supp. 1097, 1099-1100 (D. Colo. 1975). ("The general rule, and the rule in this circuit, is that in a case involving the conflict between an 'excess' clause and a 'pro-ration' clause, the 'excess' clause

prevails and the primary obligation is imposed upon the pro-rata insurer." ); *Fireman's Fund Ins. Co. v. Underwriters Ins. Co.*, 389 F.2d 767, 768 (10th Cir. 1968) (recognizing that "the majority rule disregards the pro rata clause, makes the pro rata policy the primary insurance, and gives full effect to the excess clause."). Notably, Texas, where the Central Policy was issued, also follows that rule. *See Am. Nat'l County Mut. Ins. Co. v. Travelers Indem. Co. of Ct.*, 2010 WL 2541975 at *2 (S.D. Tex. 2010)("When two car-insurance policies cover the same accident, Texas courts find no conflict between one policy's excess clause and another's pro-rata clause.... Texas courts ... respect the contracts and enforce the excess clause").

Some states have adopted an interpretive rule which provides that competing "other insurance" clauses are mutually repugnant and void, regardless of the nature of the clauses. *See Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110 (1959); *see also Shelter Mut. Ins. Co. v. State Farm Fire & Ins. Cas. Co.*, 930 S.W.2d 570, 572 (Tenn. App. 1996) (describing two lines of reasoning for analyzing this issue). Under that rule, the loss is prorated between the insurers.

The Alaska Supreme Court has adopted that rule. *See Columbia Mut. Ins. Co. v. State Farm Mut. Ins. Co.,* 905 P.2d 474 (Alaska 1995); *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112, 119 (Alaska 1972). Under Alaska's rule of interpretation, the coverages provided under the Travelers and Central policies are co-primary.

"[A] federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Elec. Distrib., Inc. v. SFR, Inc*., 166 F.3d 1074, 1083 (10th Cir. 1999) (internal quotations and citations omitted); *Vitkus v. Beatrice Co.*, 127 F.3d 936, 942 (10th Cir. 1997).

Colorado resolves conflicts of law issues by determining which forum has the "most significant relationship" to the dispute. *See Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Col. 1979) (adopting the Restatement (Second) of Conflict of Laws for resolving conflicts questions in contract actions); *First Nat'l Bank in Fort Collins v. Rostek*, 514 P.2d 314, 320 (Colo. 1973) (adopting the Restatement's "most significant relationship" approach in a tort action). For conflicts of law involving insurance contracts, guiding principles are set forth in section 6, section 188, and section 193 of the Restatement (Second) of Conflict of Laws.

Colorado's connections to this dispute are that Howe is a Colorado resident and the Travelers Policy was issued to him in Colorado.

Alaska's connections to this dispute are that the automobile accident occurred in Alaska and the Timm Action was filed and settled there.

Central argues that Alaska has the most significant relationship to the issue, pointing out that Alaska has a statutory scheme that imposes mandatory liability insurance requirements for automobiles. That argument is not persuasive. "[T]he objective of the Restatement (Second) is to locate the state having the 'most significant relationship' *to the particular issue*." *Wood Bros. Homes*, 601 P.2d at 1372 (emphasis added). The issue to be determined is a matter of contract interpretation. Alaska's mandatory insurance limits are not implicated because the limits of each policy alone exceeded the required coverage. The Alaska location of the accident is a fortuitous factor, and where, as here, the issue is one of contract interpretation, that location is not as significant as the fact that the Travelers Policy was negotiated and issued in Colorado.

Colorado law governs this action. Accordingly, with respect to the duties to defend and indemnify Howe in the Timm Action, the coverage provided by the Travelers Policy is excess to the coverage provided by the Central Policy. As the excess insurer, Travelers did not have any duty of indemnification until and unless the limits of the Central Policy were exhausted, and Central is obligated to reimburse Travelers in the amount of $158,333.00.

Based on the foregoing, it is

ORDERED that the Plaintiff's motion for summary judgment [#9] is granted. The Clerk shall enter judgment providing relief to the Plaintiff and awarding the Plaintiff its costs upon the filing of a Bill of Costs pursuant to D.C.COLO.LCivR 54.1.

Date: October 2, 2014

                              BY THE COURT:

                              s/Richard P. Matsch

                              _____

                              Richard P. Matsch, Senior District Judge